## BLISS *v.* UNITED STATES.

*(Circuit Court, E. D. Missouri, E. D.   January 2, 1889.)*

1. UNITED STATES DISTRICT ATTORNEYS—COMPENSATION—RES ADJUDICATA.

    A decree by consent in an action brought by the government, taxing the district attorney's fees at a given sum, is not conclusive that the district attorney is entitled to the amount taxed as against the government.

2. SAME—RIGHT TO COMPENSATION—INTERNAL REVENUE TAX—ENFORCEMENT OF LIEN.

    An action to enforce the statutory lien for internal revenue taxes alleged to have been evaded by defendant is "a civil action in which the United States are concerned," and which it is the duty of the district attorney to prosecute under Rev. St. § 771.

3. SAME—AMOUNT OF COMPENSATION.

    For prosecuting such action the district attorney is entitled to 2 per centum of the amount collected or realized, as provided by section 825.

4. SAME—EXCESSIVE ALLOWANCE—AUTHORITY.

    Authority to settle the case on payment of a given sum and all costs is not authority to the district attorney to retain, as against the government, the excess of his fees, as taxed, over the amount allowed to him by statute.

5. SAME—CONSENT OF COMMISSIONER OF INTERNAL REVENUE.

    By consenting to the taxation of a greater fee in favor of the district attorney than the statute allows, the commissioner of internal revenue cannot preclude the government from claiming the excess.

6. SAME—RIGHT OF THE UNITED STATES.

    The excess of fees taxed and received by the district attorney over the amount allowed by statute may be treated by the government as moneys in his hands belonging to it.

7. SAME—SET-OFF AND COUNTER-CLAIM.

    In a suit by the district attorney for compensation for other prosecutions, the government may set off such excess under the act of March 3, 1887, providing for bringing suits against the United States; section 1 giving jurisdiction to determine set-offs on the part of the government, and section 6 requiring a notice of set-off to be filed.

At Law.

Action by William H. Bliss against the United States for compensation for services in prosecuting certain "land fraud cases." 24 St. at Large, p. 505, § 1, provides "that the court of claims shall have jurisdiction to hear and determine the following matters: * * * All set-offs, counter-claims, claims for damages, * * * or other demands whatsoever on the part of the government of the United States against any claimant against the government in said court. * * *" Section 2 confers jurisdiction on the district and circuit courts, and by section 6 "it shall be the duty of the district attorney * * * to file a plea, answer, or demurrer on the part of the government, and to file a notice of any counter-claim, set-off," etc.

*W. H. Bliss, pro se,* and *Cochran, Dickson & Smith,* for plaintiff.

*Thomas P. Bashaw,* U. S. Dist. Atty., for defendant.

THAYER, J.   The seventh section of "An act to provide for bringing suits against the government of the United States," approved March 3, 1887, under which this suit is brought, makes it the duty of the court

in this class of cases to file a written opinion "setting forth the specific findings by the court of the facts therein, and the conclusions of the court upon all questions of law involved in the case. * * *" 24 St. at Large, 505, 506. In accordance with the statute the facts are stated as follows:

Plaintiff was United States district attorney for the Eastern district of Missouri from about the year 1876 until about November, 1886, and in that capacity, during his term of office, filed two bills in equity in the name of the United States against the Pacific Railroad of Missouri *et al.*, to enforce against certain property, theretofore owned by the Pacific Railroad of Missouri, the statutory lien for internal revenue taxes alleged to have accrued against and to have been evaded by that company from the year 1864 to 1871, inclusive. Various steps were taken by plaintiff herein and various services were rendered by him in the prosecution of said suits in the United States circuit court for the Eastern district of Missouri, from the date of their institution therein in the years 1876 and 1879, respectively, until the termination of the litigation on September 21, 1881. On the day last named the litigation was concluded by an entry of the following nature:

"This day comes the district attorney, on behalf of the United States, and also comes the defendant, by Thomas J. Portis, Esquire, its attorney, and by consent it is ordered that these causes be, and they are hereby, dismissed on the payment by defendant of the sum of one thousand dollars, and the following fees and costs. * * *"

"Case No. 842, in United States circuit court. United States *vs.* Pacific R. R. *et al.* Marshal's costs, $31.44; clerk's costs, $310.90; U. S. commissioner, 50 cts:; district attorney's fee, $1,500.00; costs of engrossing bill, $78.00; costs of appeal to U. S. supreme court, $97.95."

"Case No. 1510, in United States circuit court. United States *vs.* Pacific Railway *et al.* Clerk's costs, $60.05; marshal's costs, $8.24; copy, $50.00; attorney, John P. Ellis, $500; district attorney, $1,044.92."

"And thereupon said district attorney, in open court, acknowledges satisfaction of the above judgment, fees, and costs."

Prior to the entry of the foregoing decree an offer had been made to (and accepted by) the commissioner of internal revenue to compromise and settle the suits on payment by the defendant of $1,000, and "all costs in both suits." From the decree aforesaid no appeal was taken, nor was it subsequently vacated or modified. In his emolument return for the six months ending December 31, 1881, required to be made by section 833, Rev. St. U. S., the plaintiff, at the request of the department of justice, charged against himself on account of the fees allowed to the district attorney by the foregoing decree the sum of $2,500. Including said item, his aggregate fees and emoluments for the year 1881 amounted to $6,735, leaving him, by virtue of sections 835, 844, Rev. St. U. S., indebted to the government in the sum of $735, for excess of fees and emoluments over the maximum compensation allowed him by law. On April 12, 1881, plaintiff was retained by the attorney general of the United States as special assistant attorney to the attorney general, to aid in the prosecution of certain criminal cases pending in the

state courts of Missouri, Ohio, Pennsylvania, and other states, which cases grew out of alleged frauds perpetrated under the land laws of the United States, and are commonly designated as "land fraud cases," and in the due prosecution of which the government was interested, or deemed itself interested. Plaintiff was duly commissioned as such assistant attorney, and took the oath on April 25, 1881, and did thereafter, between the last date and April 15, 1883, prosecute in the courts of the states above named a large number of the cases above referred to. For services so rendered plaintiff presented to the attorney general on April 21, 1883, an account in the sum of $4,890, giving credit thereon for the sum of $1,000 theretofore paid, and claiming a balance of $3,890. On April 23, 1883, the attorney general approved the claim for the sum of $2,500, and referred the same to the first auditor of the treasury, to be paid from the United States attorneys' fund for the year 1883. To the claim in question was appended a certificate of the attorney general that the services embraced in the claim had been rendered, and that the same could not be rendered· by the attorney general, or solicitor general, or officers of the department of justice, or district attorneys. Said account in the sum of $2,500 was adjusted by the first auditor on May 3, 1883, and found to be due the plaintiff, and was certified to the first· comptroller of the treasury for his decision thereon. Said comptroller also approved the claim in the sum of $2,500, but declined to certify the same to the attorney general, so that a requisition for a treasury warrant might be drawn, and the claim duly paid. The reasons assigned by the comptroller for his action in that behalf are stated at length in *Extra Fee Case,* 4 Lawr. Comp. Dec. 422–430. In substance it may be said that, while conceding that the sum of $2,500 was justly due and properly allowed to the plaintiff for services rendered, he ruled that the fees allowed to the plaintiff by the decree of the United States circuit court for the Eastern district of Missouri, in the suits for internal revenue taxes, hereinbefore referred to, were not fees and emoluments of his office, although allowed as such by the court, and so returned by direction of the department of justice, as before stated; but that the sum so allowed, aggregating $2,544.92, was money belonging to the United States, and was had and received by plaintiff to its use. The comptroller accordingly directed the sum of $2,500, found to be due to the plaintiff as a fee in the "land fraud cases," to be appropiated and "carried to the credit of the internal revenue collections," to make good the sum of $2,500 allowed to and collected by plaintiff as a fee in the internal revenue suits. In this case plaintiff sues to recover the fee of $2,500 allowed him as aforesaid for services in the "land fraud cases." By way of set-off the government pleads that "plaintiff is indebted to it in the sum of $2,500 for money had and received to its use," meaning, of course, the money that had been paid to him as a fee in the internal revenue cases before mentioned. The court records do not show that the district attorney's fee allowed in the internal revenue cases was paid into the registry of the court. The same appears to have been paid directly to the plaintiff. Plaintiff's right to sue under the act of March 3, 1887, for

what is due to him on a claim that has been duly audited and allowed against the United States, but not actually paid, was heretofore affirmed on a plea to the jurisdiction. *Bliss* v. *U. S.*, 34 Fed. Rep. 781.

## CONCLUSIONS OF LAW.

1. The government is legally indebted to plaintiff in the sum of $2,500 for services rendered in prosecuting the "land fraud cases."

2. The decree in the revenue cases, above recited, determines conclusively, as between the United States and the Pacific Railroad Company of Missouri *et al.*, that the fees taxed in favor of the district attorney in those suits were properly taxable. The court had jurisdiction of the parties and the subject-matter, including therein the matter of the taxation of fees and costs. It may have erred in making the allowance in question to the district attorney, but if there was a mistake in that respect the judgment is not on that account void, but is merely erroneous. As between the parties to the suits the allowance in favor of the district attorney is no longer open to question. But the decree entered by consent in those cases does not conclusively establish, as between the United States and the district attorney, that the latter officer is entitled to the entire fee allowed him therein. The district attorney was not a party to those suits, and a judgment or decree is only conclusive as between parties to the record and privies. If the district attorney could be regarded as in any sense a party to those suits, his position was not adverse to the government, as he was its attorney. It is generally held that parties to a judgment are not bound by it in a subsequent controversy between each other, unless they were adversary parties. Thus, if a judgment is recovered against two or more defendants, they may, as between themselves, litigate the question as to the proportion of the judgment that each ought to pay; and, in like manner, if a judgment is recovered by several plaintiffs, they are not debarred from determining by further litigation among themselves in what manner the recovery ought to be divided. *Cox* v. *Hill*, 3 Ohio, 412; *Duncan* v. *Holcomb*, 26 Ind. 378; *Lloyd* v. *Barr*, 11 Pa. St. 41; *Wilson* v. *Mower*, 5 Mass. 407; Freem. Judgm. § 158. I conclude, therefore, that the question as to the amount of the fee which the district attorney is entitled to claim of the United States for prosecuting the revenue suits was not litigated in those suits as between the government and the district attorney, and that it is a question still open for consideration, notwithstanding the decree therein.

3. There can be no doubt that it was the plaintiff's duty to prosecute the revenue suits in question, by virtue of section 771, Rev. St. U. S. They were "civil actions in which the United States were concerned," within the meaning of that section. It is also apparent that there is no provision of law fixing the district attorney's fee for services in those cases, unless it be section 825, Rev. St. U. S., or section 824, immediately preceding. I am of the opinion that by virtue of the general language employed in section 825, allowing district attorneys "two per centum upon all moneys collected or realized in any suit or proceeding arising under the revenue laws, conducted by them, in which the United

States is a party," the plaintiff may rightfully claim (as he appears to do) that his fee in the suits against the Pacific Railroad of Missouri *et al.*, so far as the government is concerned, is determined by that section.

4. The next question to be determined is whether plaintiff can retain, as against the United States, a larger fee than the law allows; such larger fee having been taxed in his favor in the manner before stated, and already paid to him. This would be a simple question if the relation existing between the plaintiff and the government was that which exists between an ordinary client and attorney. In that event, the fee collected of the adverse party under the decree entered by consent could be retained by the attorney only in the event that the agreement of compromise, contemplating the taxation and payment of such fee by the adverse party, had been fully and fairly explained to the client, and assented to by him in advance of the compromise. It is familiar law that the relation existing between client and attorney is in the highest degree of a confidential and fiduciary character. *Valentine* v. *Stewart*, 15 Cal. 401; 1 Perry, Trusts, § 202, and cases cited; 1 Story, Eq. Jur. §§ 310–313. The utmost good faith (*uberrima fides*) must govern all of the attorney's dealings with his client. If a plaintiff in a suit merely authorizes his attorney to compromise the same on the payment by the defendant of a given sum "and all costs," and thereupon the money is paid, and by agreement with the defendant a larger sum than the law permits is taxed against the defendant as a fee in favor of plaintiff's attorney, undoubtedly the plaintiff, when he learns of the transaction, may claim as his own whatever his attorney has received from the opposing party in excess of taxable fees. The right of the client to recover money received by his attorney under the circumstances last stated is not dependent to any extent upon the motives which may have actuated the attorney, nor upon the question whether the amount taxed in his favor is a reasonable fee, or otherwise. The law does not allow an attorney to stipulate with an opposing party for the payment of his fees, in whole or in part, unless he acts with the knowledge and assent of his client. Hence, if an attorney, without the knowledge of his client, by arrangement with an opposing party, secures from him any fees in excess of what are legally taxable in his favor, the law regards him as holding what is so obtained in trust for his client, and it is optional with the client to demand the same as a part of the fruits of the litigation. 1 Perry, Trusts, § 206, and cases cited; Story, Ag. (8th Ed.) § 211. In the case under consideration plaintiff was not only attorney for the government in the revenue cases, but he was at the same time a public officer, whose fees were regulated by statute, and not by private contract. This fact renders it more difficult for him to maintain his right to the fees taxed in his favor, since a public officer cannot lawfully demand or receive greater compensation for official services than the law allows. *Freeman* v. *Henry Co.*, 32 Mo. 446. By accepting office, a public officer impliedly agrees to discharge all the duties incident thereto, for such compensation as the law prescribes. More he cannot lawfully demand, no matter how inadequate the compensation may be. It was at least incumbent on the plaintiff to

show that the commissioner of internal revenue (in whom was vested the power to compromise the revenue suits) was advised, before the compromise was consummated by a dismissal of the suits, that the compromise agreement contemplated the taxation of fees in favor of the district attorney in the sum of $2,544.92, to be paid by defendants, and that he assented to such arrangement. Proof to that effect would be requisite, as before shown, to enable plaintiff to retain the fee, if the commissioner of internal revenue had been, as to the suits in question, a merely private litigant, and the plaintiff his attorney in the prosecution of the same. But the evidence fails to show such notice and assent on the part of the commissioner. It merely shows that he authorized a settlement on the payment to the government of $1,000 "and all costs in both cases." This means, of course, legal costs. I do not base my decision, however, on the ground last indicated. I presume that the plaintiff could show that the commissioner of internal revenue assented to the taxation of the fees in question before the compromise was fully effected, or that he subsequently ratified the action of the district attorney. According to my view of the law, however, the commissioner of internal revenue could not, by consenting to the taxation of a greater fee in favor of the district attorney than the law allowed him, thereby preclude .the government from asserting its right to so much of the fee as was excessive. I conclude that, as soon as the fee was paid to the district attorney by the defendant in the revenue suits, so much of it as was in excess of what the law allowed for his services inured to the benefit of the United States. The government was forthwith at liberty to treat what was so paid to its attorney in excess of his lawful fees as money in his hands belonging to the government.

5. The right of the government to set off what is due to it from the plaintiff against his fee in the "land fraud cases," is clearly recognized in the first and sixth sections of the act under which this suit is brought. 24 St. at Large, *supra*. The amount due on the set-off is not $2,500, however, as pleaded. Plaintiff is entitled to a credit thereon in the sum of $70.89, being 2 per cent. on $3,544.92, the total amount realized by the government in the revenue suits. If he has already paid to the government the sum of $735, shown to be due by his emolument return for the year 1881, on account of fees received for that year in excess of the maximum compensation allowed him by law, he is also entitled to a further credit in that amount. Additional proof will be received as to whether the sum of $735 has been paid to the government, and judgment will then be entered in accordance with the foregoing views.