# UNITED STATES *v.* JOHNSON.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 59. Submitted November 10, 1898. — Decided February 27, 1899.

In proceedings taken by a District Attorney of the United States, by order of the Attorney General at the request of the Secretary of War, and conducted under directions of the latter, to secure the condemnation of private lands within the limits of his district for the purpose of erecting

fortifications thereon for the use of the United States, he is performing his official duties as District Attorney of the United States, and is not entitled to any extra or special compensation for them.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Boyd* for the United States.

*Mr. Jesse Johnson* in person for Johnson.

MR. JUSTICE HARLAN delivered the opinion of the court.

In the Circuit Court of the United States for the Eastern District of New York a judgment was rendered against the Government and in favor of the defendant in error Johnson for the sum of $6513.95. Of that amount $6500 represented the value of legal services rendered for the United States by Johnson, while he held the office of District Attorney for that district in proceedings in that court for the condemnation of certain lands for public purposes.

The case having been carried by writ of error to the Circuit Court of Appeals, certain questions of law arose as to which instructions are desired from this court — the controlling question being whether Johnson was entitled, for the services rendered, to any compensation beyond the salary and emoluments attached to his office.

The sections of the Revised Statutes (Title XIII, c. 16) upon the construction of which the answers to the questions propounded more or less depend are the following:

"SEC. 355. No public money shall be expended upon any site or land purchased by the United States for the purpose of erecting thereon any armory, arsenal, fort, fortification, navy-yard, customhouse, lighthouse or other public building, of any kind whatever, until the written opinion of the Attorney General shall be had in favor of the validity of the title, nor until the consent of the legislature of the State in which the land or site may be, to such purchase, has been given. The District Attorneys of the United States, upon the application

of the Attorney General, shall furnish any assistance or information in their power in relation to the titles of the public property lying within their respective districts. And the Secretaries of the Departments, upon the application of the Attorney General, shall procure any additional evidence of title which may be deemed necessary, and which may not be in possession of the officers of the Government, and the expense of procuring it shall be paid out of the appropriations made for the contingencies of the Departments respectively."

" SEC. 767. There shall be appointed in each District, except in the Middle District of Alabama, and the Northern District of Georgia, and the Western District of South Carolina, a person learned in the law, to act as Attorney for the United States in such District. . . . ."

" SEC. 770. The District Attorney for the Southern District of New York is entitled to receive quarterly for all his services a salary at the rate of six thousand dollars a year. For extra services the District Attorney for the District of California is entitled to receive a salary at the rate of five hundred dollars a year, and the District Attorneys *for all other districts* at the rate of two hundred dollars a year.

" SEC. 771. It shall be the *duty of every District Attorney* to prosecute in his district all delinquents for crimes and offences cognizable under the authority of the United States, and *all civil actions in which the United States are concerned,* and, unless otherwise instructed by the Secretary of the Treasury, to appear in behalf of the defendants in all suits or proceedings pending in his district against collectors, or other officers of the revenue, for any act done by them or for the recovery of any money exacted by or paid to such officers and by them paid into the Treasury."

" SEC. 823. The following *and no other compensation* shall be taxed and allowed to attorneys, solicitors and proctors in the courts of the United States, *to District Attorneys,* clerks of the Circuit and District Courts, marshals, commissioners, witnesses, jurors and printers in the several States and Territories, except in cases otherwise expressly provided by law. But nothing herein shall be construed to prohibit attorneys, solici-

tors and proctors from charging to and receiving from their clients, other than the Government, such reasonable compensation for their services, in addition to the taxable costs, as may be in accordance with general usage in their respective States, or may be agreed upon between the parties.

"Sec. 824. . . . For examination by a District Attorney, before a Judge or commissioner, of persons charged with crime, five dollars a day for the time necessarily employed. *For each day of his necessary attendance in a court of the United States on the business of the United States*, when the court is held at the place of his abode, five dollars; and for his attendance when the court is held elsewhere, five dollars for each day of the term. . . .

"Sec. 825. There shall be taxed and paid to every District Attorney two per centum upon all moneys collected or realized in any suit or proceeding arising under the revenue laws, and conducted by him, in which the United States is a party, which shall be in lieu of all costs and fees in such proceeding."

"Sec. 827. When a District Attorney appears by direction of the Secretary or Solicitor of the Treasury, on behalf of any officer of the revenue in any suit against such officer, for any act done by him, or for the recovery of any money received by him and paid into the Treasury in the performance of his official duty, he shall receive such compensation as may be certified to be proper by the court in which the suit is brought, and approved by the Secretary of the Treasury."

"Sec. 833. Every District Attorney, clerk of a District Court, clerk of a Circuit Court, and marshal, shall, on the first days of January and July, in each year, or within thirty days thereafter, make to the Attorney General, in such form as he may prescribe a written return for the half year ending on said days, respectively, of all the fees and emoluments of his office, of every name and character, and of all the necessary expenses of his office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year. He shall state separately in such returns the fees and emoluments received or payable under the bankrupt act; and every marshal shall state separately therein the fees and emoluments

received or payable for services rendered by himself personally, those received or payable for services rendered by each of his deputies, naming him, and the proportion of such fees and emoluments which, by the terms of his service, each deputy is to receive. Said returns shall be verified by the oath of the officer making them.

" Sec. 834. The preceding section shall not apply to the fees and compensation allowed to District Attorneys by sections eight hundred and twenty-five and eight hundred and twenty-seven. All other fees, charges and emoluments to which a District Attorney or a marshal may be entitled by reason of the discharge of the duties of his office, as now or hereafter prescribed by law, or in any case in which the United States will be bound by the judgment rendered therein, whether prescribed by statute or allowed by a court, or any judge thereof, shall be included in the semi-annual return required of said officers by the preceding section.

" Sec. 835. No District Attorney shall be allowed by the Attorney General to retain of the fees and emoluments of his office which he is required to include in his semi-annual return, for his personal compensation, over and above the necessary expenses of his office, including necessary clerk hire, to be audited and allowed by the proper accounting officers of the Treasury Department, *a sum exceeding six thousand dollars a year*, or exceeding that rate for any time less than a year."

" Sec. 844. Every District Attorney, clerk and marshal shall, at the time of making his half-yearly return to the Attorney General, pay into the Treasury, or deposit to the credit of the Treasurer, as he may be directed by the Attorney General, any surplus of the fees and emoluments of his office, which said return shows to exist over and above the compensation and allowances authorized by law to be retained by him."

" Sec. 1764. No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other Department; *and no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform, unless expressly authorized by law.*

"Sec. 1765. *No officer in any branch of the public service*, or any other person whose salary, pay or emoluments are fixed by law or regulations, shall receive *any additional pay, extra allowance or compensation*, in any form whatever, for the disbursement of public money, *or for any other service or duty whatever unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance or compensation.*"

By section 3 of the act of June 20, 1874, c. 328, 18 Stat. 85, 109, it was provided that "*no civil officer of the Government* shall hereafter receive any compensation or perquisites, directly or indirectly, from the Treasury or property of the United States *beyond his salary or compensation allowed by law : Provided*, That this shall not be construed to prevent the employment and payment by the Department of Justice of District Attorneys as now allowed by law for the performance of services *not covered by their salaries or fees.*"

The facts to be considered in connection with these statutory provisions are set forth in a statement accompanying the certificate of questions. They may be thus summarized :

By the fortification act of August 18, 1890, c. 797, 26 Stat. 315, 316, appropriations were made for gun and mortar batteries, as follows : "For construction of gun and mortar batteries for defence of Boston Harbor, two hundred and thirty-five thousand dollars; New York, seven hundred and twenty-six thousand dollars; San Francisco, two hundred and sixty thousand dollars."

The same act contained the following provision : "For the procurement of land, or right pertaining thereto, needed for the site, location, construction or prosecution of works for fortifications and coast defences, five hundred thousand dollars, or so much thereof as may be necessary, and hereafter the Secretary of War may cause proceedings to be instituted in the name of the United States, in any court having jurisdiction of such proceedings, for the acquirement by condemnation of any land, or right pertaining thereto, needed for the site, location, construction or prosecution of works for fortifications and coast defences, such proceedings to be prosecuted in accord-

ance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted: *Provided,* That when the owner of such land or rights pertaining thereto shall fix a price for the same, which in the opinion of the Secretary of War shall be reasonable, he may purchase the same at such price without further delay: *Provided further,* That the Secretary of War is hereby authorized to accept on behalf of the United States donations of land, or rights pertaining thereto, required for the above-mentioned purposes: *And provided further,* That nothing herein contained shall be construed to authorize an expenditure, or to involve the Government in any contracts for the future payment of money, in excess of the sums appropriated therefor."

By the subsequent act of July 23, 1892, c. 233, 27 Stat. 257, 258, five hundred thousand dollars, or so much thereof as was necessary, was appropriated " for the procurement of land, or right pertaining thereto, needed for the site, location, construction or prosecution of work for fortifications and coast defences."

In the year 1891, at the special written request of the Secretary of War, Johnson, being then United States District Attorney for the Eastern District of New York, was instructed by the Attorney General of the United States to institute proceedings on behalf of the Government of the United States for the condemnation for a mortar battery of certain lands on Staten Island, New York, adjacent to Fort Wadsworth in that district. With such instructions the Attorney General enclosed a copy of the Secretary's request, and stated that he acted agreeably thereto.

Proceeding under the above employment in the name of the Government of the United States, Johnson took steps to acquire such lands by proceedings for their condemnation, and obtained decrees against the persons interested in them. In order to carry on such proceedings it was necessary that he should search and ascertain, and he did search and ascertain, the titles to the lands sought to be condemned. After rendering these services, he presented two bills against the Government, which were approved and allowed by the Attor-

ney General, one being for $4000, and the other for $2500. These services were rendered by him in 1892 and were worth those sums respectively.

In the statement that accompanies the questions certified it is said that for many years before 1892, and for many years prior to Johnson's employment, it was the custom and usage of the Government to pay to District Attorneys, under like employment and for like services, compensation outside of their annual salaries as fixed by statute at the sum of two hundred dollars.

Johnson had received from the United States for services (other than those above mentioned) rendered for the Government in the year 1892, either as District Attorney or under employment or directions of the Attorney General, the sum of $2250.

In 1891 he rendered services to the Government in and about the acquisition of other lands in his district by condemnation proceedings. These services were rendered under employment similar to that above stated in acquiring lands for like purposes. For the services thus rendered in 1891 he was paid by the Government a sum exceeding six thousand dollars. He had also been paid for other services rendered to the Government in 1891 further and additional sums. The aggregate so paid for services in 1891 exceeded six thousand dollars by a sum which, together with the amounts paid to him as above stated for services rendered in 1892, equalled the sum of six thousand dollars. Such excess over six thousand dollars existed and appeared after crediting and allowing on the sums so received by him the necessary expenses of his office, including the necessary clerk hire, as audited and allowed to him in the years 1891 and 1892.

After the services rendered in 1892, and after the above sum of six thousand five hundred dollars had been allowed by the Attorney General as stated, the accounting officers of the United States caused a warrant on funds appropriated for the War Department to be drawn for the sum of six thousand five hundred dollars and "conveyed into the Treasury of the United States." That warrant "was drawn and conveyed"

against and in payment of the amount which Johnson, for services rendered in 1891, had been paid in excess of the maximum fixed by section 835 of the Revised Statutes. Such conveyance and application were made by the Government without his consent, and except as above stated his claim for six thousand five hundred dollars has not been allowed or paid.

After the above services were rendered in 1892, Johnson requested that the amounts so allowed be paid by the officers of the Treasury, but those officers refused to audit or allow his bills or any part of the same except as above stated, and refused to allow or pay to him any part of the same.

Upon the trial in the Circuit Court it was admitted that the expense account of Johnson was $1018.23, which was allowed by the Attorney General; that if the amounts he received for services in obtaining lands in said district (which services were similar in nature, employment, etc., to those here claimed for) are to be computed as part of the amount limited by section 835 of the Revised Statutes, then he had received in excess of the amount so limited for the year 1891 a sum which, added to the amounts received by him for the year 1892, (and which are fees and emoluments referred to by section 835 of the Revised Statutes,) equalled the sum of six thousand dollars and the legitimate office expenses of his office; and that if the services involved in this action and the other similar services stated above are to be accounted as a part of the maximum fixed by section 835 of the Revised Statutes, and if the Government, having paid him for one year in excess of such maximum, has the right to recoup, set off or counterclaim such overpayment against an amount otherwise due, then Johnson had no cause of action as set forth in his present suit.

The Circuit Court of Appeals desires information upon the following questions of law arising out of the above facts:

1. Whether Johnson is entitled to be paid the said sum of six thousand five hundred dollars for the services rendered by him in the year 1892? This question is submitted without reference to the provisions of section 835 of the Revised Statutes.

2. Whether, if the first question be answered in the affirmative, such compensation should be included in the fees and emoluments of claimant's office within the meaning of sections 834, 835 and 844 of the Revised Statutes.

3. Whether, if both of the above questions are answered in the affirmative, the Government of the United States can, under the circumstances stated, apply the six thousand five hundred dollars as such sum was applied, on account of the payments made by the United States for services rendered by Johnson in the year 1891.

The Government contends that the services in question were such as the law required the District Attorney to render, and consequently that he could receive no special compensation therefor.

In support of this proposition the Assistant Attorney General refers to *Gibson* v. *Peters,* 150 U. S. 342, 347. That was an action against the receiver of a national bank to recover the value of legal services alleged to have been rendered or offered to be rendered by a District Attorney of the United States in a suit brought in the name of the receiver against one McDonald. In its opinion in that case this court referred to section 380 of the Revised Statutes providing that "all suits and proceedings arising out of the provisions of law governing national banking associations, in which the United States or any of its officers or agents shall be parties, shall be conducted by the District Attorneys of the several districts under the direction and supervision of the Solicitor of the Treasury," and observed that the suit against McDonald was one embraced by that section, and that the receiver was, within its meaning, an officer and agent of the United States.

After referring also to sections 770, 823 to 827 inclusive, 1764 and 1765, the court said: "It ought not to be difficult under any reasonable construction of these statutory provisions to ascertain the intention of Congress. A distinct provision is made for the salary of a District Attorney, and he cannot receive, on that account, any more than the statute prescribes. But the statute is equally explicit in declaring, in respect to compensation that may be 'taxed and allowed,' that he shall

receive no other than that specified in sections 823 to 827 inclusive, 'except in cases otherwise expressly provided by law.' It also declares that no officer in any branch of the public service shall receive any additional pay, extra allowance or compensation, in any form whatever, for any service or duty, unless the same is expressly authorized by law, or unless the appropriation therefor explicitly states that it is for such additional pay, extra allowance or compensation.    No room is left here for construction.    It is not expressly provided by law that a District Attorney shall receive compensation for services performed by him in conducting suits arising out of the provisions of the national banking law in which the United States or any of its officers or agents are parties.    Without such express provision, compensation for services of that character cannot be taxed, allowed or paid.    Nor can the expenses of the receivership be held to include compensation to the District Attorney for conducting a suit in which the receiver is a party, for the obvious reason that the statute does not expressly provide compensation for such services.    Congress evidently intended to require the performance by a District Attorney of all the duties imposed upon him by law, without any other remuneration than that coming from his salary, from the compensation or fees authorized to be taxed and allowed, and from such other compensation as is expressly allowed by law specifically on account of services named. Nothing in the last clause of section 823 militates against this view.    On the contrary, the proper interpretation of that clause supports the conclusion we have reached.    Its principal object was to make it clear that Congress did not intend to prohibit attorneys, solicitors and proctors, representing individuals in the courts of the United States, from charging and receiving, in addition to taxable fees and allowances, such compensation as was reasonable under local usage, or such as was agreed upon between them and their clients.    But to prevent the application of that rule to the United States, the words 'other than the Government' were inserted.    The introduction of those words in that clause emphasizes the purpose not to subject the United States to any system for compen-

sating District Attorneys except that expressly established by Congress, and, therefore, to withhold from them any compensation for extra or special services, rendered in their official capacity, which is not expressly authorized by statute. Whatever legal services were rendered or offered to be rendered by the plaintiff in the McDonald suit were rendered or offered to be rendered by him as United States District Attorney, and in that capacity alone. As such officer he is not entitled to demand compensation for the services so rendered or offered to be rendered."

The full scope of the decision in *Gibson* v. *Peters* is shown by this extract from the opinion in that case. The point in judgment was that the services rendered by Gibson were in discharge of duties imposed upon him by law in relation to suits of a particular kind, and as no statute made provision for additional or special compensation for such services, his claim against the United States for extra pay could not be allowed.

In *United States* v. *Winston,* 170 U. S. 522, 525, which involved the question whether the District Attorney of the United States for the District of Washington could be allowed special compensation for services rendered by direction or at the instance of the Attorney General in a case in the Circuit Court of Appeals for the Ninth Circuit sitting at San Francisco, it was held that the duties of the claimant as District Attorney of the United States were limited by the boundaries of his district; and that while he was required to discharge all his official duties within those boundaries, he was not required to go beyond them. The court said: "Whenever the Attorney General calls upon a District Attorney to appear for the Government in a case pending in the Court of Appeals, he is not directing him in the discharge of his official duties as District Attorney, but is employing him as special counsel. The duties so performed are not performed by him as District Attorney, but by virtue of the special designation and employment by the Attorney General, and the compensation which he may receive is not a part of his compensation as District Attorney or limited by the maximum prescribed

therefor. It seems to us that this is the clear import of the statutes, and we have no difficulty in agreeing with the Court of Appeals in its opinion upon this question."

In *Ruhm v. United States*, 66 Fed. Rep. 531, 532, it was held that as it is the duty of a District Attorney to prosecute in his district all civil actions in which the United States are concerned, he is not entitled to extra compensation for conducting a suit to recover pension money fraudulently secured.

The controlling question, therefore, in the present case is, whether Johnson was under a duty imposed upon him as District Attorney to perform the services for which he here claims special compensation. If such was his duty as defined by law, then he is forbidden by statute from receiving any special compensation on account of such services — this, for the reason that no appropriation for such compensation has been made by any statute explicitly stating that it was for such additional pay, extra allowance or compensation. §§ 1764, 1765. On the other hand, if his duties as District Attorney did not embrace such services as he rendered, and for which he here claims special compensation, then he is entitled to be paid therefor without reference to the regular salary, pay or emoluments attached to his office.

What relations did the District Attorney have, by virtue of his office, with the proceedings instituted in his district for the condemnation of land under the act of 1890 relating to gun and mortar batteries for the defence of New York? That act authorized the Secretary to cause condemnation proceedings to be instituted, in the name of the United States — such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property in the States wherein the proceedings were instituted. The application of the Secretary to the Attorney General was doubtless made under the provisions of the act of August 1, 1888, c. 728, 25 Stat. 357, providing that in every case in which the Secretary of the Treasury, " or any other officer of the Government has been, or hereafter shall be, authorized to procure real estate for the erection of a public building or for other public uses, he shall be, and hereby is, authorized to acquire the same for

the United States by condemnation under judicial process, whenever in his opinion it is necessary or advantageous to the Government to do so, and the United States Circuit or District Courts of the district wherein such real estate is located shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the Attorney General of the United States, upon every application of the Secretary of the Treasury, under this act, or such other officer, to cause proceedings to be commenced for condemnation, within thirty days from the receipt of the application at the Department of Justice." By the same act it was provided that "the practice, pleadings, forms and modes of proceeding in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such Circuit or District Courts are held, any rule of the court to the contrary notwithstanding."

This statute being in force, the Attorney General directed the defendant in error as District Attorney to institute on behalf of the Government the condemnation proceedings desired by the Secretary of War. It was of course not contemplated by Congress that the Attorney General should be away from the National Capital in order to give his personal attention to the conduct of such proceedings. He therefore directed the District Attorney of the district in which the lands were situated to institute and prosecute the required proceedings. Could the District Attorney have declined to represent the United States in such proceedings upon the ground that he was not required by law to do so in his official capacity? The answer to that question depends upon the construction to be given to section 771 of the Revised Statutes which defines generally the duties of District Attorneys. That section, as we have seen, makes it the duty of every District Attorney to prosecute in his district, not only all crimes and offences cognizable under the authority of the United States, but "all civil actions in which the United States are concerned." We are of opinion that within the reasonable meaning of that section the proceedings instituted in the Federal court by Dis-

trict Attorney Johnson to condemn the lands in question for the benefit of the United States constituted a civil action in which the Government was concerned; and that in following the directions of the Attorney General to institute such proceedings and have the lands referred to condemned for the United States, he was only discharging an official duty imposed upon him by statute. It would involve a very narrow construction of section 771 to hold that judicial proceedings in a court of the United States to condemn lands for the use of the Government were not civil actions in which the United States was concerned. We think that when he attended court in the prosecution of those proceedings he was, within the meaning of section 824, "on the business of the United States."

Under the interpretation placed by us upon sections 771 and 824, it results that according to the principle announced in *Gibson* v. *Peters* the defendant in error having been under a duty to represent the United States in the condemnation proceedings referred to, and there being no statute explicitly allowing him extra compensation for the services rendered by him in and about those proceedings, his present claim must be disallowed.

This conclusion it is contended is not consistent with the usage and custom which has obtained in the Executive Departments of the Government for many years prior to the year 1892. How long such usage or custom prevailed, upon what specific grounds it rested, and in what way it is evidenced, does not appear from the statement of facts accompanying the certificate of questions. The opinions of Attorneys General to which our attention has been called by counsel certainly do not cover the precise question now before us. Some of them hold that a District Attorney is entitled to special compensation for representing the interests of the United States in suits in state courts — services in such courts not being required by the statutes regulating his official duties. That is a question not involved in the present case. We perceive no reason for holding that there has been any such long-continued practical interpretation by the Executive Depart-

ments of the Government of sections 1764 and 1765 of the Revised Statutes, brought forward from the acts of March 3, 1839, c. 82, 5 Stat. 337, 349, § 3; August 23, 1842, c. 183, 5 Stat. 510, § 2; and August 26, 1842, c. 202, 5 Stat. 525, § 12; as to justify this court in departing in any degree from such an interpretation of those sections as is required by the obvious import of the words found in them. Such a practice may be resorted to in aid of interpretation, but it cannot be recognized as controlling when the statute to be interpreted is clear and explicit in its language and its meaning not doubtful. *United States* v. *Graham*, 110 U. S. 219, 221; *United States* v. *Healey*, 160 U. S. 136, 141.

It may, however, be observed that some of the opinions of Attorneys General rest upon rules of construction that forbid the allowance of the claim of the defendant in error. In 1855, special or extra compensation was claimed by a District Attorney for services rendered under employment by the Navy Department in a certain case in a Circuit Court of the United States in which the Government was a party. Attorney General Cushing referred to the act of February 26, 1853, regulating "the fees and costs to be allowed clerks, marshals and attorneys of the Circuit and District Courts of the United States, and for other purposes." 10 Stat. 161, c. 80. That act declared, among other things, that in lieu of the compensation then allowed to the officers named, no other compensation should be taxed and allowed. It also established for District Attorneys a fee for each day "of his necessary attendance in a court of the United States on the business of the United States." The provisions of the act of 1853 have been preserved in Chapter sixteen of Title XIII of the Revised Statutes. After referring to some former opinions given by him, Mr. Cushing said: "But in a matter like that now before me, which is of the direct official business of a District Attorney in the court of the United States for his district, which is of the very class of business for which the act of 1853 expressly and in plain terms provides, and as to which any other compensation is emphatically excluded by the strong terms of that act, it does not appear to me that

any extra or special compensation can be lawfully paid to the District Attorney. Nor, in my judgment, is the case taken out of the general rule by the fact that the suit concerns immediately the business of the Navy Department, and has been the subject of instructions from the Secretary of the Navy. All the civil business of the Government concerns some one of its Departments, and may require the attention of its Head. It cannot be that a suit in the name of the United States, pending in the District or Circuit Court, is out of the scope of the regular duty of a District Attorney because of its arising in the business of the Navy Department rather than the Treasury or any other Department; nor that in such a case the service of the District Attorney becomes that of counsel specially retained by the Department. This latter enactment must have been designed, it seems to me, for contingencies, where a Head of Department needs professional services in a case not provided for by the particular terms of the law, and the special compensation to a District Attorney for the performance of such a service must depend on that fact, not on the fact that he has been instructed by the Head of the Department. A contrary construction would lay the foundation for extra compensation to District Attorneys in almost every case in which they appear in civil actions in which the United States are concerned." 7 Op. 84, 86.

At a later date, May 25, 1858, Attorney General Black had before him an application for special allowance to a District Attorney for services rendered by him. The claim, he said, involved three questions, the first of which was : Can the District Attorney, in any case, charge more for his services than the fee-bill expressly allows? He said : "The first question does not, for a moment, admit of any other reply than a direct negative : the District Attorney can receive such compensation, and such only, as the fee-bill gives. This is not only the general policy of the Government, but it is expressly declared to be the will of Congress by the act of 1853. When, therefore, a District Attorney makes a charge against the Treasury for services, he must support it by showing some clause in the fee-bill which authorizes him to receive what he

claims. When a duty is enjoined upon him by the law of his office and not merely by the request of a Department, he is bound to perform it and take as compensation what the law gives him. That is his contract; and if it be a bad one for him he has no remedy but resignation. The subject is not open to a new bargain between him and any other officer of the Government. All criminal prosecutions and all civil suits in which the United States are a party of record fall within this principle. In them no charge for extra services can be legally allowed, though it be true that some of them require an amount of labor and skill for which the compensation allowed by the fee-bill is altogether inadequate. I cannot make out, in any way satisfactory to my own mind, the ingenious distinction which would pay the officer as attorney what the fee-bill gives, and then pay him besides a *quantum meruit* for managing the same case as counsel." 9 Op. 146, 147.

In an opinion rendered March 13, 1888, Attorney General Garland, upon an extended review of the adjudged cases, said: "From these authorities it may be derived that the elements necessary to justify the payment of compensation to an officer for additional services are, that they shall be performed by virtue of a separate and distinct appointment authorized by law ; that such services shall not be services added to or connected with the regular duties of the place he holds; and that a compensation, whose amount is fixed by law or regulation, shall be provided for their payment." 19 Op. 121, 125, 126.

The same views were expressed by the Second Comptroller of the Treasury in an opinion delivered by him as late as 1893 in *Earhart's case.* Cousar's Dig. 12.

We are of opinion that Congress intended by sections 1764 and 1765 to uproot the practice under which, in the absence of any statute expressly authorizing it, extra allowances or special compensation were made to public officers for services which they were required to render in consideration only of the fixed salary and emoluments established for them by law. Our duty is to give effect to the legislation of Congress, and not to defeat it by an interpretation plainly inconsistent with the words used.

The conclusion is that as the defendant in error was under a duty as District Attorney to represent the United States in the condemnation proceedings referred to (§ 771); as his attendance in court on those proceedings was on the business of the United States (§ 824); as no statute provides for extra or special compensation for services of that character; and as the existing statutes declare that no officer in any branch of the public service shall directly or indirectly, or in any form whatever, receive from the Treasury of the United States any additional pay, extra allowance or compensation, unless the same be authorized by law and the appropriation therefor expressly states that it is for such additional pay, extra allowance or compensation, Rev. Stat. §§ 1764, 1765, act of June 20, 1874, c. 328, the claim of the defendant in error must be rejected, and judgment rendered for the United States.

*For the reasons stated the first question is answered in the negative; and under the certificate the answer to the other questions becomes both unnecessary and immaterial. It will be so certified.*

MR. JUSTICE SHIRAS and MR. JUSTICE PECKHAM dissented.