## In re SMITH.

### (Circuit Court of Appeals, Sixth Circuit.   March 14, 1913.)

### No. 2,281.

1. BANKRUPTCY (§ 272*)—TRUSTEES—EMPLOYMENT OF ATTORNEY.

The general rule that the receiver may not employ the solicitor of either party to the suit in which he is appointed applies to trustees, but it is only when the trustee is acting adversely to one of the parties that there is any impropriety in his employing the counsel of the other.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

2. BANKRUPTCY (§ 272*)—ATTORNEY FOR TRUSTEE OR RECEIVER—ADVERSE INTEREST.

In general, a trustee or receiver in bankruptcy should not employ the attorney who represents the bankrupt, or one who represents interests in litigation which are adverse to the general estate, or in conflict with other interests represented by the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

3. BANKRUPTCY (§ 272*)—ATTORNEY FOR TRUSTEE.

Where it had been the uniform practice in a district to permit the attorneys for the petitioning creditors or the attorney for other creditors to act as attorney for the receiver or trustee, except in those cases where such attorneys represent interests adverse to those of the general creditors, the fact that attorneys for the trustee represented certain creditors, whose interests were not adverse to the estate, did not absolutely disqualify them to represent the trustee, so as to preclude an allowance for their services to the trustee out of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

4. BANKRUPTCY (§ 446*)—REVIEW—ABSENCE OF SPECIAL FINDING—TRANSCRIPT.

In the absence of a special finding or a sufficient transcript from which it appeared that attorneys for the trustee in bankruptcy stipulated for their employment by the trustee in advance of the latter's appointment, the Court of Appeals, on petition to review, could not notice an objection to an allowance for the attorney's services to the trustee on that ground.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 446.*]

5. BANKRUPTCY (§ 446*)—PRESUMPTIONS—ATTORNEY'S SERVICES—ALLOWANCE.

Where attorneys for a bankrupt's trustee applied for an allowance of $1,950 for services for the trustee, and the court awarded $1,500, it would be presumed, on a petition to review, that the court determined that they were entitled to $1,500.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 446.*]

6. BANKRUPTCY (§ 272*)—ATTORNEY FOR TRUSTEE—FEES—ALLOWANCE—LUMP SUM.

The fact that attorneys for the trustee of a bankrupt were allowed $1,500 in a lump sum, for services rendered, without a detail of items, afforded no ground for reversal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
203 F.—24

7. BANKRUPTCY (§ 272*)—ATTORNEY FOR TRUSTEE—EMPLOYMENT—SERVICES—ALLOWANCE.

In the absence of a rule requiring the selection of attorney by the trustee of a bankrupt to be approved by the court in advance of the rendition of services, and in view of the custom of permitting attorneys to file papers in their own name on a claim for services rendered, it was no objection to a claim of attorneys for services rendered the trustee that no previous order was made by the referee authorizing their employment, that the trustees' accounts were silent on the subject of attorneys' compensation, and that they presented their claim directly on their own behalf.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

Petition for Revision of Proceedings of the District Court of the United States for the Southern Division of the Eastern District of Michigan; Alexis C. Angell, Judge.

In Bankruptcy. In the matter of bankrupt proceedings of H. H. H. Crapo Smith. Petition of Lucy C. Smith to revise an order of the District Court allowing a claim of a firm of attorneys for legal services rendered to the trustee. Affirmed.

C. C. Smith, of Detroit, Mich. (H. M. & D. B. Duffield, of Detroit, Mich., of counsel), for petitioner.

Merriam, Yerkes & Simons, of Detroit, Mich., for respondent.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This case is here under section 24b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]) for review of an order of the District Court allowing, in part, the claim of a firm of attorneys residing in Detroit for legal services in the administration of the bankrupt estate. The prominent facts are these:

Five days before the bankruptcy proceedings were begun, one Holmes obtained a judgment for nearly $3,000 against the bankrupt. There was also pending a suit by another creditor of the same name, by the declaration in which $10,000 damages were claimed. The attorneys mentioned, whom we shall call the claimants, represented the Messrs. Holmes, respectively, in the two matters referred to. It seems probable that the bankruptcy (which was voluntary) was induced by these suits. Claimants, as representing the Messrs. Holmes, procured an ex parte order appointing a trust company as receiver; this company having later been elected trustee. The bankrupt's wife (petitioner here) presented a claim of nearly $52,000, and his daughter a claim of about $1,500. The total claims, outside of the Smiths and the Holmes, were only about $2,000. The Holmes claim not in judgment was defended by Mrs. Smith at her own expense, and the recovery reduced from nearly $9,000 to less than $4,000. The claimants here conducted the contest against Mrs. Smith's claim; their relations toward their creditor clients having never been changed. Her claim was allowed by the referee. The bankrupt's estate netted but

little over $20,000, or only about one-third of the claims allowed. Claimants asked an allowance of $1,950 for their entire services, including the contesting of petitioner's claim. The latter, through her attorney, objected to the allowance of the claim here under review. The claim was allowed in full, upon the merits, the referee also expressing the opinion that as to $1,000 provisionally allowed and paid, pending final hearing on the claim, petitioner was estopped to complain. The district judge reduced the allowance to $1,500, not passing upon the question of estoppel as to the $1,000.

We summarize, as follows, the principal grounds relied upon to defeat recovery, so far as they are pertinent in view of the district judge's conclusion: (a) That claimants, being the attorneys of the creditors Holmes, were not impartial and independent counsel as between different creditors, and so could not lawfully represent the receiver or trustee, especially in contesting petitioner's claim, and therefore, are entitled to no compensation; (b) that the selection of the trust company as trustee was made under an arrangement with claimants as attorneys for the creditors Holmes that claimants should be employed as attorneys for the trustee; (c) that no order was made by the referee authorizing claimants' employment as attorneys for the trustee, that the latter's accounts are silent upon the subject of attorneys' compensation, and that claimants presented their claim directly and on their own behalf; (d) that the allowance made is unreasonably large; that it is in a lump sum, without detail of items, and obviously includes items which the District Court held claimants not entitled to recover; (e) that the claim itself was not itemized and detailed; that the inquiry was unduly limited by the referee, and the testimony as to the value of claimants' services not as full as petitioners were entitled to; (f) that the recovery included work which the receiver and trustee should have performed; covers work by more than one attorney, in that a portion of such work was or should have been done by the regular office attorney of the trust company; and that the recovery is in result contrary to the intent of section 72 of the Bankrupt Act (U. S. Comp. St. Supp. 1911, p. 1512), which forbids further compensation to receivers and trustees than provided by the act.

1. Could claimants lawfully represent the trust company as receiver and trustee? Apart from the alleged unlawful bargain for claimants' employment previous to the trust company's appointment as trustee, later discussed, the only suggested ground of disqualification is that claimants represented the creditors Holmes, and that the bankruptcy litigation became substantially that of "Holmes v. Smith." Did the mutual antagonism of these individual creditors, under the facts presented here, make claimants' employment absolutely unlawful, so as imperatively to forbid, as matter of law, compensation for services actually rendered for the benefit of the estate, as distinguished from the question whether such employment was desirable or discreet? We say this because we are not at liberty, on this review, to determine questions of fact, or to exercise our own discretion, or to interfere with the exercise of discretion by the court below. We are limited to revision in matter of law only. In re Stewart (C. C. A. 6) 179 Fed. 222, 102 C. C. A. 348, and cases cited.

[1, 2] The general rule is that a receiver may not employ the solicitor of either of the parties to the suit in which he is appointed (Beach on Receivers, § 262); and this rule applies to trustees. But it is only when the receiver is acting adversely to one of the parties that there is any impropriety in his employing the counsel of the other. Beach on Receivers, § 263; High on Receivers, § 217; Alderson on Receivers, § 233. The general rule doubtless is that a trustee or a receiver should not ordinarily employ the attorney who represents the bankrupt, or an attorney who represents interests in the litigation which are adverse to the general estate, or in conflict with other interests represented by the trustee (Loveland on Bankruptcy [4th Ed.] p. 257); and where there are matters in controversy between different classes of creditors, the court will usually decline to authorize the employment by the trustee of an attorney representing one of such classes. In re Rusch (D. C.) 105 Fed. 607.

[3] It is seemly that the trustee have an advisor impartial as between different creditors. It is unfortunate that such course was not pursued here. It is likely that the length and bitterness of the litigation in this matter results in considerable part from the fact that claimants represented both the creditors Holmes, in the prosecution of their claims, and the trustee in the contesting of petitioner's claim; and a rule which, by anticipation, should effectually preclude such experience would seem wise. But the question here concerns only claimant's right to compensation for services actually rendered, so far as appears, without protest by any creditor to the court (either referee or judge) against the propriety of claimants representing the trustee. Petitioner seems to have contented herself with protesting to the trustee. She was not, we think, justified in conclusively assuming that no charge would be made against the estate for claimants' services. She alone objects to allowing the compensation asked. It is to be noted that claimants did not represent the trustee in respect of the claims of the creditors Holmes, and that the interests of their clients, with respect to the claim of Mrs. Smith, were not adverse to any class of creditors, or even to any individual creditor, except Mrs. Smith alone. In contesting the latter's claim they represented the interests of every other creditor. It was the duty of the trustee to be advised by disinterested counsel as to whether he should contest Mrs. Smith's claim; but, apart from personal bias engendered by the contest of the Holmes' claims, claimants were not necessarily less disinterested than would be attorneys employed specially by creditors to resist that particular claim; and we are not prepared to say, as matter of law, that it would not have been competent for the creditors to have chosen an attorney to contest Mrs. Smith's claim, had the trustee refused to do so (In re Roadarmour [C. C. A. 6] 177 Fed. 379, 381, 100 C. C. A. 611), or that mere personal bias on the part of the Holmes' attorneys would disqualify them as matter of law. We may remark, in passing, that if it was improper for claimants to contest Mrs. Smith's claim it was likewise improper for Mrs. Smith's attorney to contest the Holmes' claim. The original question of propriety does not wholly depend upon whether or not compensation from the estate is asked; nor should compen-

sation, otherwise proper, be denied merely because petitioner's claim is of such size that she must pay five-sixths of the recovery. That the bankrupt estate was not prejudiced by claimants' advice to contest the claim in question affirmatively appears by the referee's conclusion that "the facts disclosed by the examination of the bankrupt warranted the trustee and its attorney in making a most thorough and searching investigation as to the bona fides" of Mrs. Smith's claim; and by the assumption of the district judge, in view of the referee's opinion, that "the trustee was justified in directing its attorney to endeavor to defeat the claim. * * *" It has in some cases been considered proper that counsel for creditors should be employed by a receiver appointed in a suit brought to set aside fraudulent sales because of his familiarity with the proceedings. Beach on Receivers, § 263; Alderson on Receivers, § 233, and cases cited. In Keyes v. McKerrow, 180 Mass. 261, 62 N. E. 259, it was held that, in the absence of a rule of 'court forbidding such employment, a trustee in bankruptcy might lawfully employ the bankrupt's attorney in the collection of debts, on the ground that there were no conflicting interests between the bankrupt and the trustee in that matter. In the instant case the referee states that it has been the uniform practice in the district, since the present Bankruptcy Act was passed, "to permit the attorneys for the petitioning creditors or the attorney for other creditors to act as attorney for the receiver or trustee, except in those cases where such attorneys represent creditors whose interests are adverse or contrary to the interest of the general creditors"; and the district judge states that the practice has been "to allow attorneys for creditors to advise the trustee." The effect of these statements of the referee and judge as to the practice is not overthrown by the decision of the former district judge in Re Columbia Iron Works (D. C.) 142 Fed. 234, in which, on review of a selection of counsel previous to the performance of services, a conclusion was reached opposed to the propriety of the appointment here in question. The district judge, in deciding the instant case, said:

"In the absence of a rule or decision distinctly forbidding it, it would be unjust to put such rule into force and give it retroactive effect."

We cannot disturb this conclusion.

[4] 2. The alleged agreement in advance with the trust company, that if claimant procured its appointment they should be retained as advisors. The district judge properly said:

"If such were the fact, no allowance should be made. * * * Any practice of the kind must be utterly condemned."

We cannot construe anything said by the district judge as finding the existence of such fact. Attached to the petition for revision is the testimony of the trust company's office attorney, relied upon to prove the fact of such prior agreement. But not only does this testimony fail unequivocally so to assert, but the record does not purport to contain all the testimony upon this subject. The allegation in the petition is not proof of the fact. In the absence of special findings or sufficient transcript, we cannot review the question. In re Roadarmour

(C. C. A. 6) 177 Fed. 379, 100 C. C. A. 611; In re Throckmorton (C. C. A. 6) 196 Fed. 656, 116 C. C. A. 348.

[5, 6] 3. There was evidence tending to show that the value of the time spent by claimants was $2,300. The amount included for each item making up this gross amount does not appear. The amount asked before the referee was $1,950. Claimants were held entitled to nothing from the estate for procuring the appointment of the receiver and attending the creditors' meeting at which the receiver was chosen trustee. The amount charged for such services, or for those the charges for which were not criticised by the district judge, does not appear. The items, the charges for which were criticised, seem to have amounted to about $1,800 out of the $2,300 mentioned. The total award was $1,500. We are unable to say, from the record, that the allowance made by the district judge was unreasonably large, or that it included items which the judge held claimants were not entitled to recover. While the judge did not, in terms, declare that claimants are entitled to $1,500, we cannot, in the face of the fact of allowance, assume otherwise. The fact that the allowance is in a lump sum, without detail of items, affords no reason for its reversal.

[7] 4. In view of the lack of rule requiring the trustee's selection of attorney to be approved by the court in advance of the rendering of service, and in the light of the judge's finding of fact that it has been the general practice, though without any rule on the subject, to allow attorneys to file papers in their own name "on claim for services rendered," the objections grouped under subdivision (c) are not well taken.

5. From the fact that the judge did not refer the matter back to the referee for an accounting, we infer that it was thought the petitioner was not prejudiced, in view of the lessened award, by the alleged undue limitation of inquiry on the part of the referee, and the lack of fullness of proof as to the value of claimants' services. The objection of lack of detail in the claim was largely addressed to the discretion of the court.

6. It is not clear that the award made by the district judge was prejudicial to petitioner in respect to the criticisms grouped in subdivision (f) above.

We have considered all the assignments of error, although without discussing all, and content ourselves with saying that we find no reversible error. This conclusion makes it unnecessary to consider the question of estoppel before referred to.

The order of the District Court is affirmed.