McPHERSON et al. v. UNITED STATES et al.

(Circuit Court of Appeals, Sixth Circuit. August 1, 1917.)

No. 2867.

1. APPEAL AND ERROR ⬦4—PROPER MODE OF REVIEW.

An order entered in a suit in equity brought by a receiver, vacating a previous order made on settlement of a compromise decree allowing fees to counsel for the receiver, *held* properly reviewable by appeal.

2. RECEIVERS ⬦96—APPOINTMENT OF COUNSEL—RECEIVER FOR COLLECTION OF ASSETS.

The general rule that a receiver should not employ counsel of either party is limited to cases of adverse interest, and has no application to a case in which a receiver is appointed, in accordance with the prayer of the bill, to recover property fraudulently conveyed by the defendant.

3. RECEIVERS ⬦96—UNITED STATES ATTORNEY—APPOINTMENT AS COUNSEL FOR RECEIVER.

The United States brought a suit in equity against a corporation, alleging that it had defrauded the government of internal revenue taxes, that it was insolvent, that its assets had been converted by stockholders, and praying for a receiver to recover such assets, and such receiver was appointed. *Held*, that there was no impropriety in the appointment by

the court of the district attorney and assistant district attorney, who had brought the suit as counsel for the receiver, to bring suits against the stockholders.

4. DISTRICT AND PROSECUTING ATTORNEYS ⬤═6(1)—UNITED STATES ATTORNEY —RIGHT TO ACCEPT PRIVATE COMPENSATION—"CIVIL ACTIONS IN WHICH THE UNITED STATES ARE CONCERNED."

In a suit by the United States against a corporation, charged with having defrauded the government of internal revenue taxes, a receiver was appointed to recover money alleged to have been fraudulently converted by stockholders, and the district attorney and his assistant were appointed as his counsel. A suit was brought by the receiver against the stockholders, which was compromised and settled, the costs to be paid by defendants. On entry of the decree the court allowed a counsel fee to the receiver's attorneys, which was paid by the defendants. Criminal prosecutions for the fraud were also pending against certain of the defendants. *Held*, that the receiver's suit was ancillary to the main suit, and within Rev. St. § 771 (Comp. St. 1916, § 1296), which makes it the duty of the district attorney to prosecute "all civil actions in which the United States are concerned," and that it would have been the official duty of the district attorney to conduct the suit, if requested by the Attorney General; that the fact that the appointment was made by the court without such request was immaterial, as it was known to the Attorney General, and the district attorney and his assistant were treated by him and the court throughout as representing the government, as they in fact did; and that it was contrary to public policy to permit them to receive private compensation, although paid by defendants for the performance of an official duty, at least without the consent of the Attorney General, and especially in view of the pending criminal prosecutions.

In Error to, and Appeal from, the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Ancillary suit by Edward L. Taylor, Jr., as receiver, against Dennis Kelly and others. Sherman T. McPherson and Harley E. Burns appeal from an order entered on motion of the Attorney General of the United States. Affirmed.

Lawrence Maxwell and Edward P. Moulinier, both of Cincinnati, Ohio, for plaintiffs in error and appellants.

Stuart R. Bolin, U. S. Atty., of Columbus, Ohio, for defendants in error and appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. On April 10, 1915, the United States filed its amended bill in equity in the court below, alleging that the Capital City Dairy Company, of Columbus, Ohio, had defrauded the government out of large sums of money in connection with the manufacture and sale of artificially colored oleomargarine, through the payment of a tax of only one-quarter of a cent per pound applicable to the uncolored product, instead of 10 cents per pound to which artificially colored oleomargarine was subject; further alleging due estimate, assessment, and levy against the Dairy Company of a tax of more than $2,000,000 on account of those frauds, and the lien of the United States thereunder on all the Dairy Company's property, the sale under the levy of all that company's tangible property (leaving more than

$1,800,000 still unpaid), the conversion by stockholders of the company's assets through the receipt of dividends not paid out of profits, the company's abandonment of its business, its insolvency, and its lack of assets except the sums misappropriated by stockholders; and praying for the appointment of a receiver, with authority to collect from stockholders the sums so misappropriated, and to apply the same toward the payment of the remaining lien of the United States. (The original bill had been filed February 5, 1915.)

The appellants McPherson and Burns, who were then respectively United States Attorney and Assistant United States Attorney for the Southern district of Ohio, signed the bill as solicitors for plaintiff. Nine days later Edward L. Taylor, Jr., was duly appointed receiver of the Dairy Company's assets, with authority to recover all property interests of the Dairy Company, and Messrs. McPherson and Burns were, on the court's own motion, designated as counsel for the receiver, "on account of the knowledge possessed by [them] of the matters affecting the defendant, its officers and stockholders." Two days later the receiver, under special leave granted, filed through appellants, as his solicitors and counsel, his bill against several stockholders of the Dairy Company, including Dennis Kelly, as well as representatives of the estates of two deceased stockholders and the wife of Dennis Kelly, to recover (and apply to the debt of the United States) corporate moneys fraudulently misappropriated and concealed.

In September, previous to the filing of the original bill for receivership, several of the defendants had been indicted in the District Court below on account of the frauds involved in the receivership suit. The indictments were still pending, and appellants were actively connected with the prosecutions, under direction of a special assistant to the Attorney General, and expected to take part in the trials which were soon to occur.

On April 28, 1915, seven days after the receiver's bill against the stockholders was filed, an offer of $400,000, made by the defendants other than the Pirrung estate, in settlement of the civil liability of all defendants except that estate, was accepted by the Attorney General, the defendants in that connection to pay the costs. This offer and this settlement were made and discussed at a conference in the office of the Commissioner of Internal Revenue, at which were present the Commissioner, his solicitor, the collector of internal revenue for the Southern district of Ohio, the receiver of the Dairy Company, Mr. Herron of the Attorney General's staff, the appellant McPherson, United States Attorney and solicitor for the receiver, and two counsel for the compromising defendants, as well as another official representing the government. Nine days after this conference and compromise, the various defendants involved filed a formal answer to the receiver's bill, and on the same day the receiver reported to the court and recommended the acceptance of the offer of "$400,000, and costs herein to this date, taxable against the last above named defendants, said costs to include such compensation for the receiver herein and fees for his attorneys as this court may order and direct to be paid." The receiver's recommendation was approved by the court, and on the following day

(May 8th) the court fixed the receiver's compensation at $20,000, and that of the appellants, as attorneys for the receiver, at $20,000 in the aggregate. These two items of compensation were immediately paid by the defendants, in connection with the payment of the first installment of the compromise payment.

On June 1st the Attorney General moved to vacate the allowance to both the receiver and his counsel, whereupon each of the three persons concerned placed in the hands of the court the amount of the fee awarded and paid him, and expressed in writing his willingness that the court reconsider its allowance of fees and make such order as the facts might warrant.

The principal grounds of the Attorney General's motion (so far as counsel fees are concerned) were that appellants' service in question was an official service in an action to enforce a civil liability to the United States, for which compensation other than the official salary is forbidden; that the settlement involved the compromise of an alleged violation of the internal revenue laws, for which United States attorneys are forbidden to receive compensation; that appellants' relations to the pending criminal cases made such payment of counsel fees improper; that the order for payment was made without previous notice to the United States; and that the compensation allowed appellants was grossly excessive. The Attorney General also asked the annulment of the original designation of appellants as counsel for the receiver, for the reason that the action in which the receiver was appointed was begun by appellants as attorneys for the United States as plaintiffs, and that accordingly their appointment as attorneys for the receiver was improper.

[1] Hearing was at once had upon the Attorney General's motion, and resulted in an opinion by the District Judge that appellants were, in the prosecution of the receiver's suit, acting in their official capacity as United States Attorney and Assistant United States Attorney respectively, and so were not entitled to receive compensation other than their official salaries; also that the Attorney General had not consented to the payment of such compensation. The United States thereupon disclaiming right to the $20,000 paid appellants, and Daniel Kelly then applying for the same, the amount was returned to him, on his giving bond to pay appellants so much of the $20,000 as might thereafter be allowed to one or both of them. The question of the receiver's compensation was reserved by the court. Its order denying compensation to Messrs. McPherson and Burns is before us for review, both on appeal and writ of error. We think appeal the proper remedy, and the writ of error will be dismissed.

A further statement of facts will assist in an understanding of the controversy: On April 20, 1915, the day before the receiver's bill was actually filed, the Commissioner of Internal Revenue and the Attorney General were advised by appellant McPherson of the appointment of himself and appellant Burns as attorneys for the receiver; it appears that at the compromise conference in the Commissioner's office, when appellant McPherson stated that he would leave his fees to the court, Mr. Herron said that he (McPherson) "could not get anything for what

he had done prior to his appointment as attorney for the receiver";
that Mr. McPherson replied, "Of course not," and that Mr. Herron
then said, "Oh, well then, why talk about that?" and in his affidavit he
states:

"Undoubtedly I gave the impression to the attorneys for the defendants that
in the settlement the matter of attorney's fees were not an item to be serious-
ly considered, and undoubtedly Mr. Taylor, in his statement as to the court's
fixing his fee, left the same impression on the minds of those present."

Mr. Herron, appellant McPherson, and Receiver Taylor, after the
compromise was arrived at, went to the office of Assistant Attorney
General Wallace, to whom the proposition was presented. Mr.
Wallace then went to Attorney General Gregory, and received his ap-
proval of the compromise, which was reported back by Mr. Wallace
to Messrs. Herron, McPherson, and Taylor. Mr. McPherson says
expressly (and Mr. Taylor by apparently permissible implication) that
Assistant Attorney General Wallace was informed of the agreement
respecting fees of receiver's counsel. Mr. Wallace expressly denies
this, and Mr. Herron says he has no recollection of anything being
said at either conference with Mr. Wallace about receiver's fees or
attorney's fees, and is "confident they were not mentioned." Without
questioning the good faith of Messrs. Taylor and McPherson, we can-
not doubt that Mr. Wallace did not understand that feature of the
situation, and had no idea that appellants were to receive any compen-
sation for their services, except as included in their official salaries,
and that had he so understood, he would not have assented to it; and
it is clear that Attorney General Gregory was not advised of that fea-
ture. From what was said, however, at the conference first mentioned,
and from the subsequent announcement of the compromise offer, we
are convinced that appellants and the receiver, as well as defendants'
counsel, understood (though, as it turned out, mistakenly) that the
Department of Justice had consented that the costs to be paid should
include the receiver's compensation as well as that of his counsel for
services rendered after, but not before, the receiver was appointed,
to be fixed by the court; and Mr. Herron's statement confirms the
naturalness of such understanding.[1] Acting on this understanding,
the attorneys for defendants, together with the receiver and appellants,
agreed between themselves that none of them should make any sugges-
tion to the court as to the amount of either receiver's or attorney's fees;
and in the order which was drafted by the participation of all the
counsel concerned blanks for the items of compensation were left to be

[1] Mr. Herron's affidavit states that it was understood that "the receiver was
to be allowed by the court what his services justified, and that Mr. McPherson
should receive the ordinary pay of an attorney for what he had done since his
appointment as attorney for the receiver, but I did not think the matter was
worth mentioning, and I am sure that no one spoke of it. I had given no
thought to the impropriety of Mr. McPherson getting any compensation at all,
feeling that he had done a great deal of valuable and unique work for the gov-
ernment, was a great factor in making the settlement, and therefore might well
have an extra allowance made to him. I understood, however, that that allow-
ance must be based on what he had done since he was appointed attorney for
the receiver."

filled in by the court. It is conceded on all hands that defendants' attorneys, as well as Messrs. McPherson and Taylor, observed that agreement. It appears, however, that appellant Burns, on being applied to by a person supposedly in Kelly's interest for information (in connection with the raising of the money required to carry out the compromise) as to the amount of the receiver's compensation, attorney's fees, and costs which Kelly would probably be called upon to pay, stated that it would be impossible for him to give an idea upon that subject, but that, if the court asked for suggestions as to the amount of such fees, he would say that "a fair and reasonable fee would be 5 per cent. of the amount agreed upon in settlement to the attorneys and 5 per cent, to the receiver." Appellant Burns disclosed to Judge Sater the fact of this interview. Judge Sater, in his opinion, states in substance that in appointing appellants as counsel for the receiver he did not expect that they would receive compensation, other than their regular salaries, unless they should be continued as attorneys after their terms of office expired, and then only for services thereafter rendered, and that "trustworthy persons inform me, and the evidence conclusively shows, that it was announced by me at one of the hearings that he was not otherwise to be paid";[2] that appellant Burns, in relating his conversation with Kelly's representative, stated that the latter said that the amount suggested (5 per cent. to the attorneys and 5 per cent. to the receiver) "was about right and would be satisfactory"; and that appellants' compensation was fixed in the belief that the Attorney General had assented to the payment of compensation and that the defendants were satisfied with the amount which the court fixed. The compensation was fixed by filling in the blanks in the order drafted by counsel.

It is undisputed that appellant McPherson, as well as the receiver and defendants' counsel, were ignorant of Burns' statement to the court. It should be said that Burns made his disclosure to the District Judge on being told that the "court could not act intelligently without information," and that he denies telling Judge Sater that defendants or their counsel had expressed themselves as satisfied to pay the attorneys $20,000. The fact, however, that Kelly's supposed representative made no objection to Burns' statement of his attitude, would naturally tend to raise at least an inference of his acquiescence. There is no doubt that the sum allowed was highly extravagant compensation for services rendered, at least after the appointment of the receiver.

1. Appellants challenge the right of the United States to intervene by motion to vacate the award of compensation. We have no doubt,

[2] The affidavit of one of defendants' counsel states that in the conference between appellants, the receiver and defendants' counsel, in connection with the settling of the entry of appointment, Judge Sater said, in substance: "Of course Mr. McPherson and Mr. Burns will not be entitled to receive any compensation while they occupy their present positions, they shall continue as counsel for the receiver while they occupy their present official positions, but my intention is that, if this litigation be pending when they cease to occupy their present positions, they shall continue as counsel for the receiver, and, in that event, they would be entitled to reasonable compensation for services rendered by them after that time." This statement was not, upon the hearing below (so far as shown by the record), denied by any one. The brief of counsel in this court, however, contains such denial.

however, that the Department of Justice, which represents the government of the United States, has a very proper interest in seeing to it that the rights of litigants in cases to which the government is a party are in every way respected, and that the officers of the department are not remiss in their duty, and is especially interested in those regards when criminal proceedings are pending, as here. We see no element of estoppel against the United States to complain. But, more than this, the court which appointed the receiver and his counsel, and awarded compensation, clearly had the right, upon its own motion or at the instance of a party to the suit, to reconsider its action in that regard. However, all question of jurisdiction to so reconsider is foreclosed by appellants' consent thereto.

The important and meritorious questions are: First, whether appellants were eligible to appointment as counsel for the receiver; and, second, whether they could lawfully receive any compensation whatever as such counsel.[3]

[2, 3] 2. Questions of compensation apart, the mere fact that appellants were counsel for the United States in the original suit filed in its name did not make their appointment as counsel for the receiver necessarily improper. The general rule that a receiver should not employ counsel of either party is limited to cases of adverse interest (In re Smith [C. C. A. 6] 203 Fed. 369, 372, 121 C. C. A. 485; Alderson on Receivers, § 233), and has no application to proceedings, such as taken here, to recover property fraudulently conveyed. Appellants' representation of the receiver in the ancillary suit involved no necessary conflict of interest between the United States and the receiver (High on Receivers [4th Ed.] § 217, pp. 259, 260; Daniel v. Insurance Co. 149 Mich. 626, 629, 113 N. W. 17). Should counsel's duty to the United States and to the receiver be in actual experience found to conflict, the receiver should, of course, employ other counsel. Nor (still apart from questions of compensation) did the fact that appellants were respectively United States Attorney and Assistant United States Attorney disqualify them from acting as counsel for the receiver in the prosecution of the suit to recover from stockholders. The receiver's action in that regard was merely ancillary to, and in effect a continuation of, the original suit for the appointment of a receiver. The United States was the party beneficially interested; and there was, in our opinion, no more impropriety in appellants representing the receiver, so far as concerns the prosecution of the suit to reach specific assets for the benefit of the United States, than in filing the original bill for the receivership had for the purpose of such suit. Indeed, as we shall see, it was appellants' duty, as between themselves and the United States, to represent the interests of the United States therein, so far as the government should request.

[4] 3. The more important question concerns appellants' right to compensation for the services rendered. As we have already said, we have no doubt that it would have been the duty of appellants to repre-

---

[3] It is assumed by all parties that, if appellants are entitled to any compensation, the case will be remanded to the District Court for hearing as to amount.

sent the United States in the receiver's suit, if requested by the government, and without compensation other than their official salaries. The original bill was in effect as well as in name that of the United States, and showed on its face that it was filed by direction of the Attorney General, and by authority and sanction of the Commissioner of Internal Revenue. The United States Attorneys represented the plaintiff therein, as was made their duty, not only by section 838 of the Revised Statutes (Comp. St. 1916, § 1297), which relates to revenue fraud cases, but by section 771 (section 1296), which makes it the duty of every district attorney to prosecute in his district "all civil actions in which the United States are concerned." The receiver's bill was, as already said, purely an ancillary or dependent proceeding,[4] throughout which the United States was treated as the sole beneficiary, as in fact it turned out to be. It is unnecessary to decide whether this ancillary proceeding should be classified as a revenue fraud case, under section 838, for we think it clear that it was a "civil action in which the United States are concerned," within the meaning of section 771, which is not limited to cases in which the United States is a party of record. In Smith v. United States, 158 U. S. 346, 353, 15 Sup. Ct. 846, 848, 39 L. Ed. 1011, it is said:

"By section 771 it is not only the duty of the district attorney to prosecute all delinquents for crimes and offenses against the federal laws, but 'all civil actions in which the United States are concerned,' and there is a finding that the claimant was not only directed by the Attorney General to appear, but that the government was interested either in the prosecution or defense of such suits, *although the direct nature of such interests does not fully appear.*"

And again (158 U. S. 355, 15 Sup. Ct. 849, 39 L. Ed. 1011):

"It can hardly be supposed that Congress could have intended that the Attorney General should not be at liberty to call upon the official representative of the United States in each district to defend, as a part of his official duty, the interests of the government, in *any suit in which it was interested.*" (Italics ours.)

In Hillborn v. United States, 163 U. S. 342, 345, 16 Sup. Ct. 1017, 1018, 41 L. Ed. 183, the doctrine of Smith v. United States was reaffirmed, to the extent that the words—

" 'prosecute all civil actions' were not to be interpreted in any technical sense, but should be construed as covering any case in which the district attorneys are employed to prosecute the interests of the government, whether such interests be the subject of attack or defense."

In United States v. Ady (C. C. A. 8) 76 Fed. 359, 22 C. C. A. 223, a district attorney was held not entitled to extra compensation for services rendered by direction of the Attorney General for defending officers of the army in suits against them for acts done in the line of their duties.

While appellants were not directed by the Attorney General to appear in the receiver's suit as attorneys for that officer, and while it

---

[4] See White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67; Compton v. Jesup (C. C. A. 6) 68 Fed. 263, 279, 15 C. C. A. 397, and cases cited; Robertson v. Conway (C. C. A. 6) 188 Fed. 579, 584, 110 C. C. A. 377; Cobb v. Sertic (C. C. A. 6) 218 Fed. 320, 134 C. C. A. 116, and cases cited.

would have been entirely competent for the receiver to employ wholly disinterested counsel, we think appellants were throughout the litigation recognized by the court, the receiver and the Department of Justice as representing the United States. The department was, at the time the bill was filed, notified that the court had appointed appellants as attorneys for the receiver; it continuously treated appellants, both by correspondence and by personal interviews with appellant McPherson, as representing the interests of the United States in that suit. The dominating character of appellants' relations toward the receiver's suit and its compromise was that of attorneys for the United States. As was well said by Judge Sater:

"The receiver was appointed to collect, if possible, the government's claim. The circumstances were such that the district attorney could not aid the receiver without acting for the United States. In the performance of his duty he could of course avail himself of the services of his assistants, but the purpose in his appointment was, as heretofore stated, to secure as far as possible his individual attention to the case."

Both appellants had, in December preceding the filing of the government's original bill, attended a conference in the office of the Commissioner of Internal Revenue, in which procedure for recovery from stockholders was considered. Such proceeding was naturally a part of the government's plan when its bill was filed, and one or both of appellants had presumably been actively considering the subject prior to their appointment as counsel for the receiver. The arrangements for the compromise conference, including appellant McPherson's call to Washington for the purpose, were official in form. The Attorney General alone, on the part of the plaintiff in that suit, determined whether the proposition of compromise should be accepted. The order confirming the compromise directed the payment to the collector of internal revenue of the entire sum of $400,000 recovered, and the receiver paid directly to that officer the cash paid down on the compromise, as well as the avails of the note maturing June 1st thereafter.

Without deciding that the district attorney may not properly receive compensation for representing a receiver in the prosecution of a creditors' suit in which there are substantial beneficiaries aside from the United States, or that an attorney for the United States, as counsel for a receiver in a suit in which the United States is interested, may in no case, even by express consent of the government, receive from a defendant, under a compromise of litigation, compensation for special and unusual services, although rendered to the United States as the sole party beneficially interested (on which questions we express no opinion), it is plain to our minds that under the circumstances existing here such recovery was not permissible, at least in the absence of such consent. It is immaterial that the fees in question were paid by defendants, rather than out of the fund recovered. Recovery of such fees from a defendant, if had without the government's consent, would naturally belong to the United States. As said by the late Judge Thayer:

"The law does not allow an attorney to stipulate with an opposing party for the payment of his fees, in whole or in part, unless he acts with the knowledge and consent of his client." Bliss v. United States (C. C.) 37 Fed. 191, 195.

And, as said by Judge (later Mr. Justice) Brewer, in affirming the judgment in that case:

"Public policy requires the strictest adherence to the rule that when a counsel receives from the defendant in a case in which he is prosecuting money above the fees which by law he is entitled to, the money which is received belongs to his client." Bliss v. United States (C. C.) 38 Fed. 230.

The principles so stated apply with equal force under the existing statute, which provides salaries to the United States Attorneys for the district in question in full for official services. Act May 28, 1896, c. 252, §§ 6, 7, 29 Stat. 179, 180 (Comp. St. 1916, §§ 1418, 1419). We think recovery by appellants for services in effect rendered the United States forbidden by sound public policy, under the circumstances presented here, including the facts that the United States were the only beneficiaries, the reason for appellants' appointment as already stated, the intention of the court (whether communicated or not) that appellants should receive no compensation while holding their official positions, the actual relations between appellants and the government toward the litigation and in the effecting of the compromise, the fact of the pendency of the criminal cases and appellants' relations thereto, lack of authoritative consent on the part of the United States to such recovery, and the fact that the United States were not represented in the making of the actual order allowing compensation.

We think public policy, as declared by the statutes and the decisions of the courts of the United States, opposed generally to the receipt by United States Attorneys of private compensation for the performance of statutory duties. Previous to the act of 1896 (29 Stat. 179, supra), providing a salary in full for official services, the Supreme Court, in Gibson v. Peters, 150 U. S. 342, 347, 14 Sup. Ct. 134, 136, 37 L. Ed. 1104, in denying recovery by a United States district attorney for services rendered to the receiver of a national bank, said:

"Nor can the expenses of the receivership be held to include compensation to the district attorney for conducting a suit in which the receiver is a party, for the obvious reason that the statute does not expressly provide compensation for such services. Congress evidently intended to require the performance by a district attorney of all the duties imposed upon him by law, without any other remuneration than that coming from his salary, from compensation or fees authorized to be taxed and allowed, and from such other compensation as is expressly allowed by law specifically on account of the services named."

This proposition was reaffirmed in United States v. Johnson, 173 U. S. 363, 372, 19 Sup. Ct. 427, 43 L. Ed. 731 et seq. And see Garter v. United States, 31 Ct. Cl. 344. The force of these decisions is strengthened, rather than impaired, by the act of 1896. Except as indicating the policy of the law, we attach no special importance to section 3170 of the Revised Statutes (Comp. St. 1916, § 5893), which makes it an offense for a district attorney to receive anything for compromising a violation of the internal revenue laws (assuming that the compromise in question was a revenue law violation) or to section 18 of the act of

1896, just cited (Comp. St. 1916, § 1430), which penalizes the acceptance by United States Attorneys of illegal fees. The fees in question were paid under judicial order allowing compensation, obtained in the evident belief that the government and all parties concerned had assented thereto. But as indicating the spirit of the laws the sections referred to are pertinent.

State statutes fixing compensation for the official services of a public prosecutor have been held to forbid the recovery of additional compensation for services which it was his official duty to perform—not only from third persons, and in pursuance of express contract therefor (Coggeshall v. Conner, 31 Okl. 113, 120 Pac. 559, 39 L. R. A. [N. S.] 81, Ann. Cas. 1913D, 577), but from the county, even where the services were rendered under express agreement to pay therefor (McHenderson v. Anderson County, 105 Tenn. 591, 59 S. W. 1016; Money v. Beard, 136 Ky. 219, 124 S. W. 282). In the Coggeshall Case it was said (31 Okl. 115, 120 Pac. 560, 39 L. R. A. [N. S.] 81, Ann. Cas. 1913D, 577):

"It is against public policy for a public officer to be allowed private compensation for the performance of any duty as a public officer."

In the Anderson County Case it was said:

"It cannot alter the rule of law as to either of these officials that the value of their services was far beyond the compensation provided by statute. * * * Public office is taken and held with the emoluments and burdens which the law imposes, and the burdens are or may be far beyond the compensation allowed in many cases. But this gives no valid claim for additional compensation."

In Wilson v. Otoe County, 71 Neb. 435, 98 N. W. 1050, the prohibition against recovery of extra compensation is held to extend even to extraofficial services. And see Railroad Co. v. Lee, 37 Ohio St. 479.

The pendency of the criminal cases, and appellants' relations toward them, to our minds give special emphasis to the rule of public policy invoked.

In our opinion United States v. Mormon Church, 6 Utah, 9, 44, 21 Pac. 503, 524, et seq., is distinguished from the instant case, not only because of the later statute of 1896, providing for compensation by salary alone, but because of the prominent features of this case not found in the Church Case.

It follows that, at least in the absence of the consent of the United States, appellants could not lawfully retain the compensation in question; and it was at least incumbent upon them to show that such consent was given. This burden has not been sustained, for not only is there no direct proof that Mr. Herron was authorized to agree on the terms of the compromise, but the implications from the testimony are the other way. The order setting aside the award of compensation for services rendered in the prosecution of the receiver's suit was therefore rightly made.

No question of appellants' right to compensation for services rendered the receiver personally, as distinguished from services rendered for the benefit of the United States, is presented; for it does not appear

that appellants rendered any substantial services to the receiver unless as incidental to, or involved in, the services rendered the United States. The order vacating the award of compensation is accordingly affirmed.