ARNESON et al. v. GOULD.

In re UNITED STATES INSTALLMENT REALTY CO.

(Circuit Court of Appeals, Eighth Circuit. August 6, 1925.)

No. 6677.

1. Bankruptcy ☞317—Attorney for officers charged with fraudulent conduct is disqualified to act as attorney for receiver.

As a general rule, one who is attorney for officers of company charged with fraudulent conduct is disqualified to act as attorney for receiver of company, and should not be compensated for services so rendered.

2. Bankruptcy ☞317—State court's appointment of counsel for receiver not reviewed in federal court, save where clear case of abuse of judicial discretion is shown.

Action of state court in appointing counsel for receiver will not be reviewed in federal court, unless a clear case of flagrant violation of rule against appointment of counsel adversely interested and abuse of judicial power is established.

3. Bankruptcy ☞317—Attorney held not disqualified to act for receiver by prior representation of officer of company.

That attorney appointed by state court as counsel for receiver had previously represented for short time officer charged with fraudulent conduct held not to disqualify him, or preclude his recovery of compensation for his services.

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth and John F. McGee, Judges.

In the matter of the bankruptcy of the United States Installment Realty Company. From an order approving the referee's allowance of compensation to Charles D. Gould, counsel for a receiver appointed by the state court, John M. Arneson, trustee, and others appeal. Affirmed.

P. A. Wells, of Minneapolis, Minn. (George H. Selover, of Minneapolis, Minn., on the brief), for appellants.

Charles B. Elliott, of Minneapolis, Minn., for appellee.

Before SANBORN and LEWIS, Circuit Judges.

LEWIS, Circuit Judge. The question presented in this appeal in whether Charles D. Gould, attorney at law of Minneapolis, Minn., is entitled to and and should be allowed any compensation for professional services which he rendered to the receiver of the United States Installment Realty Company. That company was a Minnesota corporation organized in 1903, with an authorized capital of $175,000. The business which it transacted for several years was like that of a building and loan association. Later it began issuing bond installment contracts which might be paid for on the installment plan or in one payment, with certain rights and privileges to the holders. All of its issued stock was owned by three individuals and they, as its officers, controlled its policies and business methods. In 1915 they caused the incorporation under the laws of Minnesota of the U. S. I. Realty Company, with an authorized capital of $1,000,000. The three individuals who organized and controlled the company first named thereupon transferred all of the issued stock in that company to the second company and took therefor stock in the latter, and thereafter the two companies were closely associated in business transactions. A large amount of stock in the latter company was issued and sold to the public. It appears to have taken over and thereafter carried on the active part of the business which the first-named company had been doing in real estate. It was authorized to buy, mortgage, improve and sell real estate, both improved and unimproved, and to make all kinds of contracts in relation thereto. It owned the first company and transferred to it as a holding company securities and contract obligations which it received in carrying on a general real estate business. It acquired lands and city property in Minnesota, lands in Wisconsin, and about 30,000 acres in Texas, which it proposed to develop and sell in small tracts. Harry J. Murphy became one of its stockholders, and in January, 1923, he brought a stockholders' suit against the U. S. I. Realty Company in the state district court at Minneapolis, in which he asked for a receiver of that company. He joined as defendants in that suit the United States Installment Realty Company and the three individuals who were officers of both companies. He asked that a receiver be appointed for the other company also. He alleged that the companies had sufficient property in amount and value, if conserved by the court and turned into money, to pay all liabilities and leave a substantial amount for stockholders, that there had been gross misman-

agement of both companies, there had been fraudulent representations to stockholders and investors, that the business of the two companies had been so mingled that the rights of each as against the other were in confusion and uncertainty, that those in charge had been conducting each company to their individual gain and profit, and their assets would be wasted if they were permitted to continue in control. Early in February the defendants filed a joint answer, alleging that both companies were solvent, denying the charge of mismanagement and fraudulent conduct, and praying that the bill be dismissed. Counsel for Murphy then had the books of the two companies examined by a public accountant, who completed his work and made report early in May.

In the meantime Gerrit Roggen, a creditor, brought suit in the United States District Court at Minneapolis against the U. S. I. Realty Company, in which he asked that court to appoint a receiver for it. A large number of creditors, including Harry J. Murphy, were permitted to intervene in that suit and they joined Roggen in the relief sought. On May 21st that court appointed Charles D. Gould and one of the officers of the two companies as receivers. There was objection to this appointment by creditors, who asked that the court remove them as receivers and appoint some one else. Gould was one of the two attorneys who had filed the answer in Murphy's suit. On May 29th the United States District Court entered an order removing those receivers, and in their stead appointed Edwin C. Garrigues as receiver of the U. S. I. Realty Company. In its order removing them the court said the order was made not because of a showing of lack of ability or of integrity on the part of the receivers theretofore appointed, but because in the judgment of the court the affairs of the corporation could not be administered by said receivers without undue friction and serious embarrassment to them. After the U. S. I. Realty Company had been put in receivership by the federal court, counsel in the suit brought by Murphy agreed that a receiver might be appointed by the state court for the United States Installment Realty Company, and on June 7th the judge of that court appointed a receiver for that company. The receiver selected as his counsel one of the attorneys for Murphy, and one of the attorneys, Charles D. Gould, who had filed answer for the defendants in that suit, and they acted as counsel for the receiver without objection on the

part of any one until the United States Installment Realty Company was adjudged bankrupt in the United States District Court for Minnesota and until the question of allowances for the services of the receiver and of his counsel came on for hearing and settlement in the bankruptcy court. At the taking of testimony before the referee in bankruptcy on that question it was for the first time suggested that Gould should not have anything for his services. The state court that appointed him had allowed him and his co-counsel for the receiver each $500 on account for services, and that had been paid to Gould. The receiver appointed by the state court was in charge for about five months. He was selected receiver because of his long experience in dealing in real estate and his knowledge of realty values. He and the receiver appointed for the U. S. I. Realty Company by the federal court co-operated in an attempt to untangle the complicated affairs of the two companies. They found both of them insolvent. There were a great many holders of bond installment contracts in the older company, some of whom had paid in full and some were still paying on the installment plan. It also had entered into and held many other contracts in reference to real estate; their value, if any they had, required extended investigation. Holders of bond investment contracts in the old company, stockholders in the new and creditors of both, all pressed for settlements. It is sufficient to say that the receiver, during the five months in which he was in charge, was in constant need of the advice and guidance of his attorneys, and it is not claimed that the amount allowed by the referee for services rendered by Charles D. Gould was unreasonable.

The referee found that Gould was appointed one of the attorneys for the receiver by order of the district court of Hennepin county, Minnesota, that he had given the receiver wise and good advice, that during the progress of that receivership a considerable number of adjustments had been made with claimants and court orders had been secured approving settlements made. He further found that during that receivership at least two serious efforts were made to reorganize that company, and that pending those efforts the receiver did not press liquidation of that estate as thoroughly as might have been done if such attempts to reorganize had not been made, and that immediately following the failure of the reorganization schemes that company was put into bankruptcy. He al-

7 F.(2d)—34

lowed Mr. Gould an additional sum to the $500 that had been paid him. On petition of creditors the action of the referee in making this allowance was brought on for review by the District Court. Counsel for creditors objected to the allowance of any sum whatsoever to Gould for his services. The court, consisting of two judges, after considering arguments and other matters submitted in support of and in opposition to the report and recommendation of the referee, ordered that the referee's report and findings be in all respects approved; and from that order this appeal was taken.

[1] The only assignment of error it that the court erred in making any allowance whatsoever for counsel fees to Charles D. Gould. It is contended that Mr. Gould was an unfit person to act as receiver's counsel, because he was one of the counsel who filed answer for the defendants in the Murphy suit, that in filing that answer he also represented the individual defendants who were officers of the two companies and who were charged with fraudulent management of company affairs and with conducting business of the companies for their personal profit and gain at the expense of creditors, certificate holders and stockholders. Counsel rely upon the general rule that a receiver and those who advise him should occupy a position of fairness to all who may be interested in or liable to the estate under administration, that one who is the attorney for officers charged with fraudulent conduct, and against whom the receiver should take action, is disqualified and should not be compensated. On this proposition there is no disagreement betweent counsel and there is no conflict in the authorities.

"The general rule is that a receiver may not employ the solicitor of either of the parties to the suit in which he is appointed; * * * and this rule applies to trustees. But it is only when the receiver is acting adversely to one of the parties ·that there is any impropriety in his employing the counsel of the other. * * * The general rule doubtless is that a trustee or a receiver should not ordinarily employ· the attorney who represents ·the bankrupt, or any attorney who represents interests in the litigation which are adverse to the general estate, or in conflict with other interests represented by the trustee; * * * and where there are matters in controversy between different classes of creditors, the court·will usually decline to authorize the employment by the trustee of an attorney representing one of such classes." In re Smith, 203 F. 369, 372, 121 C. C. A. 485, 488.

Authorities are cited in the above excerpt. See, also, In re Stern, 144 F. 956, 76 C. C. A. 10. The rule is so general and well settled that citations are unnecessary. It is the old principle that one cannot serve two masters. But Mr. Gould testified that before Murphy brought his suit he had never represented either of the companies, nor any of its officers as their attorney and counsel, and that after he was appointed one of the attorneys for the receiver he at no time represented any of the defendants in Murphy's case; and hence as attorney for the receiver there was not and could not be any conflict of duty on his part. There is no evidence to the contrary.

[2, 3] Furthermore the question now presented to us was one for determination by the judge of the state court who appointed the receiver and his counsel, the facts relied on were before him, and it would. take a clear case, a flagrant violation of the rule, an abuse of judicial power by that tribunal before we would assume to sit in judgment on the propriety of its act, Adler v. Seaman, 226 F. 828, 843; and no such showing is made here. Charges of fraud are easily and sometimes carelessly made, and there is no presumption that they are true. The two United States District Judges who approved the action of the referee in bankruptcy in making the allowance said, in a memorandum which they filed with their order of approval:

"It was stated on the hearing of this matter without calling forth any dissent, that all of the parties interested consented to the appointment of Mr. Gould as attorney for the receiver, and that there were no objections until the period of his service was at an end, and he sought compensation therefor.

"Under the circumstances, we do not think it would be proper treatment of the order of the judge of the state court, or of Mr. Gould, to at this time ignore the facts stated in relation to the manner of his appointment, and the acceptance thereafter of his services by parties interested, without objection until the time arrived for determining the compensation he should receive.

"At this late date, to dismiss Mr. Gould without compensation for his services would be an extremely harsh proceeding, and one not at all warranted by the facts."

We find no facts touching the services which Mr. Gould rendered that challenge his professional integrity, and the complaint that he did not cause the receiver to take immediate action against the officers of the companies is fully explained and the course

taken approved by the receiver himself. We may add that it is stated in appellee's brief that the two counsel who represented the receiver had each been a state district judge, and the one who brought the suit for Murphy had also been a Supreme Court justice of Minnesota. This statement was not denied in argument at the bar. Both Mr. Gould and his associate counsel resided at Minneapolis and both were doubtless well known by the two United States District Judges who resided there and approved the referee's findings and allowances. In the light of the facts disclosed by the record and the situation as it is presented to us, we consider the contention on which the appeal rests without any merit.

Affirmed.